Carly M. Roman (No. 349895)
Samuel J. Strauss, *pro hac vice forthcoming*
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

*Attorneys for Plaintiff and Putative Class*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**AT SAN FRANCISCO**

| | |
|---|---|
| **LAURO HERRERA,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**LIBERTY BANKERS INSURANCE GROUP**<br><br>*Defendant.* | Case No. 3:25-cv-06775-TLT<br><br>AMENDED CLASS ACTION COMPLAINT<br><br><u>DEMAND FOR JURY TRIAL</u><br><br>Honorable Judge Trina L. Thompson |

## AMENDED CLASS ACTION COMPLAINT

1. Lauro Herrera ("Plaintiff") brings this class action against Liberty Bankers Insurance Group ("Defendant") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. Upon information and good faith belief, Defendant routinely violates 47 C.F.R. § 64.1200(c) and, in turn, 47 U.S.C. § 227(c)(5), by delivering, or causing to be delivered, more than one advertisement or marketing text message to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without prior express invitation or permission required by the TCPA.

## PARTIES

3. Plaintiff is a natural person that resides in this district.

4. Defendant is a Texas-based corporation.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 (“TCPA”).

6. This Court has personal jurisdiction over the Defendant and venue is proper because a substantial part of the events giving rise to this claim occurred within this district.

## INTRODUCTION

7. “Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans ‘outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers’ *id.* § 2(6), and sought to strike a balance between ‘[i]ndividuals’ privacy rights, public safety interests, and commercial freedoms’ *id.* § 2(9).

8. “The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government’s web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive

telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). Private suits can seek either monetary or injunctive relief. *Id.* This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

## PLAINTIFF'S ALLEGATIONS

9. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10. Plaintiff's residential telephone number (707) 380-XXXX.

11. Plaintiff has a separate number that he uses for business.

12. Plaintiff personally listed his telephone number on the National Do-Not-Call Registry on December 22, 2022, and has not removed it from the Registry since that time.

13. Plaintiff uses telephone number (707) 380-XXXX for personal, residential, and household purposes. Specifically, Plaintiff uses this telephone number to communicate with his family.

14. Plaintiff's telephone number (707) 380-XXXX is not associated with any business, nor does Plaintiff use the telephone number for business purposes.

15. Plaintiff has never received business reimbursement for or taken tax deductions for the use of telephone number (707) 380-XXXX.

16. Plaintiff has never been a customer of Defendant nor consented to receive calls from Defendant.

17. Despite this, Plaintiff received and continues to receive dozens of telephone solicitations to his residential number, (707) 380-XXXX, from or on behalf of Defendant.

18. These calls were made for the purpose of advertising Defendant's insurance policies to Plaintiff and followed a similar script. For example, the caller would explain they are selling life insurance that would cover funeral, burial, and cremation expenses, and then ask for name, age, zip code, and date of birth.

19. On many occasions, Defendant's calls clearly began with a pre-recorded chatbot before connecting Plaintiff with a live representative. Indicators included: (a) the robot did not respond until Plaintiff spoke, (b) it did not respond to questions asked by plaintiff, and (c) it used a generic monotone voice.

20. The robocalls also followed a similar script such as: "You may qualify for an insurance plan that will cover 100% of your funeral, burial, and cremation expenses. Now are you between the ages 40 and 80?..."

21. Once, when Plaintiff spoke to the robot, it repeated itself. Specifically, in response to the question, "Now are you between the ages 40 and 80?" Plaintiff asked, "is this a robot?" In response, the robot repeated the same question, "Now are you between the ages 40 and 80?"

22. Defendant's persistent, harassing calls to Plaintiff include, but are not limited to the following:

- July 19, 2024, from the number (707) 414-9286

- July 20, 2024, from the number (707) 419-4833
- July 23, 2024, from the number (667) 244-5138
- July 23, 2024, from the number (707) 731-1289
- July 23, 2024, from the number (707) 229-9638
- July 24, 2024, from the number (707) 731-2188
- July 25, 2024, from the number (707) 773-8160
- July 25, 2024, from the number (707) 416-4957
- July 25, 2024, from the number (707) 998-7140
- July 25, 2024, from the number (707) 630-6837
- July 25, 2024, from the number (707) 988-3862
- July 26, 2024, from the number (612) 405-1706
- July 26, 2024, from the number (707) 817-3340
- July 26, 2024, from the number (707) 585-4871
- July 26, 2024, from the number (707) 883-3492
- July 26, 2024, from the number (707) 606-3138
- July 26, 2024, from the number (707) 472-0533
- July 29, 2024, from the number (707) 633-5834
- July 29, 2024, from the number (636) 231-8109
- July 29, 2024, from the number (707) 343-1215
- July 31, 2024, from the number (559) 400-6318
- August 1, 2024, from the number (530) 584-0335
- August 1, 2024, from the number (240) 850-6868
- August 1, 2024, from the number (840) 841-0156

- August 2, 2024, from the number (505) 596-9190
- August 6, 2024, from the number (530) 546-2791
- August 7, 2024, from the number (213) 893-9429
- August 8, 2024, from the number (707) 743-4239
- August 8, 2024, from the number (707) 377-3374
- August 8, 2024, from the number (707) 433-0475
- August 8, 2024, from the number (707) 800-7043
- August 9, 2024, from the number (650) 686-5959
- August 10, 2024, from the number (703) 485-0234
- August 10, 2024, from the number (707) 356-1129
- August 12, 2024, from the number (458) 800-1411
- August 12, 2024, from the number (385) 550-2770
- August 12, 2024, from the number (707) 682-3578
- August 12, 2024, from the number (681) 302-1511
- August 12, 2024, from the number (213) 952-3861
- August 13, 2024, from the number (707) 207-3513
- August 13, 2024, from the number (707) 582-8013
- August 13, 2024, from the number (707) 667-1945
- August 13, 2024, from the number (707) 222-0056
- August 13, 2024, from the number (839) 235-9671
- August 13, 2024, from the number (839) 235-9671
- August 13, 2024, from the number (559) 342-9357
- August 14, 2024, from the number (220) 732-5439

- August 14, 2024, from the number (707) 389-7212
- August 15, 2024, from the number (323) 558-1388
- August 16, 2024, from the number (316) 374-6791
- August 16, 2024, from the number (707) 798-2743
- August 19, 2024, from the number (707) 691-7809
- August 20, 2024, from the number (707) 740-0259
- August 20, 2024, from the number (707) 788-6543
- August 20, 2024, from the number (707) 942-8898
- August 20, 2024, from the number (707) 333-6579
- August 21, 2024, from the number (707) 977-3925
- August 21, 2024, from the number (707) 407-0900
- August 22, 2024, from the number (707) 464-2689
- August 22, 2024, from the number (928) 439-7400
- August 22, 2024, from the number (855) 745-0056
- August 23, 2024, from the number (707) 676-5055
- August 27, 2024, from the number (707) 275-5876
- August 27, 2024, from the number (707) 565-0702
- August 28, 2024, from the number (984) 345-6313
- August 28, 2024, from the number (707) 510-3861
- August 28, 2024, from the number (707) 927-9124
- August 28, 2024, from the number (617) 977-9265
- August 29, 2024, from the number (707) 240-8075
- August 29, 2024, from the number (724) 522-5333

- August 30, 2024, from the number (223) 258-7682
- August 30, 2024, from the number (707) 634-8382
- August 30, 2024, from the number (707) 426-2715
- August 30, 2024, from the number (707) 776-9116
- August 31, 2024, from the number (501) 480-1751
- September 2, 2024, from the number (209) 788-0547
- September 3, 2024, from the number (718) 978-3828
- September 3, 2024, from the number (227) 233-1219
- September 3, 2024, from the number (360) 677-4937
- September 3, 2024, from the number (415) 325-0495
- September 4, 2024, from the number (321) 635-1732
- September 4, 2024, from the number (707) 429-9370
- September 5, 2024, from the number (208) 293-0978
- September 9, 2024, from the number (859) 938-5639
- September 10, 2024, from the number (949) 528-0072
- September 11, 2024, from the number (276) 265-5464
- September 11, 2024, from the number (727) 201-1975
- September 11, 2024, from the number (818) 337-6147
- September 12, 2024, from the number (707) 607-1900
- September 12, 2024, from the number (707) 320-5876
- September 12, 2024, from the number (828) 705-8798
- September 12, 2024, from the number (707) 380-4569
- September 13, 2024, from the number (707) 646-6851

- September 15, 2024, from the number (707) 266-1897
- September 25, 2024, from the number (707) 506-1201
- September 25, 2024, from the number (707) 357-3851
- September 26, 2024, from the number (908) 633-3785
- September 30, 2024, from the number (707) 679-6168
- October 22, 2024, from the number (707) 709-2243
- October 23, 2024, from the number (707) 388-3168
- October 25, 2024, from the number (707) 864-1542
- October 25, 2024, from the number (707) 993-0272
- November 5, 2024, from the number (213) 263-0938
- November 5, 2024, from the number (707) 998-9690
- November 13, 2024, from the number (707) 363-1485
- November 14, 2024, from the number (430) 204-8447
- January 1, 2025, from the number (920) 212-4252
- March 26, 2025, from the number (707) 464-5237
- March 26, 2025, from the number (707) 302-1100

23. The aforementioned calls were made by or on behalf of Liberty Bankers, as they were promoting Liberty Bankers' products.

24. In an effort to identify the company responsible for the persistent and harassing calls, Plaintiff engaged with one representative until the caller confirmed he was calling on behalf of Liberty Bankers.

25. On another occasion, Plaintiff answered the caller's questions until he was transferred to Lydia Sutton, who confirmed she was "with" Liberty Bankers before attempting to sell Plaintiff life insurance.

26. Thus, the calls were made by or on behalf of Liberty Bankers, or with Liberty Bankers knowledge, consent, approval, and/or acquiescence.

27. Many of Defendant's spam telephone calls appear to come from Plaintiff's area code (707), likely due to a technique called "spoofing." This technique is used to trick people into believing the call is legitimate and from someone they might know, making it more likely to be answered.

28. On at least ten (10) occasions, Plaintiff answered Defendant's calls and informed Defendant's representatives that he was not interested in Defendant's services and requested that Defendant cease placing telemarketing calls to him.

29. Plaintiff felt annoyed and harassed by Defendant's repeated calls and non-compliance with his do-not-call requests.

30. Defendant's constant telemarketing calls are more than just a nuisance. They are emotionally draining. Because Plaintiff uses his personal phone to communicate with family, he cannot turn his phone off in case someone in his family needs his help. Thus, The relentless ringing of Plaintiff's phone has invaded his personal time and interrupted his work, such that he feels harassed and overwhelmed.

31. Plaintiff and other individuals who received Defendant's telemarketing suffered an invasion of privacy and were harassed by the conduct of Defendants.

\\

\\

## CLASS ALLEGATIONS

32. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

33. Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23:

> **National DNC Class:** All persons in the United States who: (1) received more than one call from or on behalf of Defendant; (2) promoting Defendant's goods or services; (3) within a 12-month period; (4) on their cellular telephone line or residential line; (5) whose cellular or residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (6) at any time in the period that begins four years before the date of filing this Complaint to trial; (7) except those persons that provided Defendant with their telephone numbers prior to receiving calls from or on behalf of Defendant.

34. Excluded from the class are Defendant, Defendant's officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

35. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of its agents.

36. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

37. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to

vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Class, and Defendant has no defenses unique to Plaintiff.

38. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

a. whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

b. whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls and;

c. whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

39. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members, such that joinder of all members is impracticable.

\\

\\

\\

\\

40. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c. Defendant has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

**d.** Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National DNC Class)**

41. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

42. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. §64.1200(c)(2).

43. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls to be

initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

44. These violations were willful or knowing.

45. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

46. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class, respectfully requests that the Court enter judgment against Defendant for:

A. Certification of the class as alleged herein;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned as counsel for the Class;

D. Damages to Plaintiff and members of the class pursuant to 47 U.S.C. § 227(c)(5);

E. Attorneys' fees and costs, as permitted by law; and

F. Such other or further relief as the Court deems just and proper.

*[Counsel signature block to follow on next page.]*

Respectfully submitted this 3rd day of October, 2025.

By: */s/ Carly M. Roman*
Carly M. Roman (SBN 349895)
Samuel J. Strauss, *pro hac vice forthcoming*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com
sam@straussborrelli.com

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I, Carly M. Roman, hereby certify that on October 3, 2025, I caused the foregoing to be electronically filed using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 3rd day of October, 2025.

Respectfully submitted,

By: *<u>/s/ Carly M. Roman</u>*
Carly M. Roman (No. 349895)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com